UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEUBEN FOODS, INC.,

                                    Plaintiff,

            v.

COUNTRY GOURMET FOODS, LLC,
CAMPBELL SOUP COMPANY,

                                    Defendants.

**DECISION
and
ORDER**

08-CV-561S(F)

APPEARANCES:             HISCOCK & BARCLAY, LLP
                         Attorneys for the Plaintiff
                         FRANK V. BALON, of Counsel
                         1100 M&T Center
                         Three Fountain Plaza
                         Buffalo, New York    14203

                         BUCHANAN INGERSOLL & ROONEY, PC
                         Attorneys for Defendant Country Gourmet Foods, LLC
                         PETER S. RUSS, of Counsel
                         301 Grant Street
                         One Oxford Centre - 20th Floor
                         Pittsburgh, Pennsylvania    15219

                         GOODWIN PROCTOR, LLP
                         Attorneys for Defendant Campbell Soup Company
                         FOREST A. HAINLINE, III, of Counsel
                         Three Embarcadero Center
                         San Francisco, California   64111

                         PHILLIPS LYTLE, LLP
                         Attorneys for Defendant Campbell Soup Company
                         PAUL F. JONES, of Counsel
                         3400 HSBC Center
                         Buffalo, New York    14203

## JURISDICTION

This matter was referred to the undersigned by Hon. William M. Skretny on

September 18, 2008 for all non-dispositive matters (Doc. No. 17).  The matter is

presently before the court on Defendant Campbell Soup Company's motion to stay

discovery filed June 22, 2009 (Doc. No. 77).


## BACKGROUND

Plaintiff commenced the instant action against Defendants Country Gourmet Foods, LLC ("County Gourmet") and Campbell Soup Company ("Campbell" or "Defendant") ("Defendants") by filing a complaint on July 31, 2008.  The court's scheduling order filed November 13, 2008, directed the parties to engage in mediation pursuant to the court's Alternative Dispute Resolution Plan, with the initial mediation session to be conducted not later than January 28, 2009 (Doc. No. 25).  The mediation session was not conducted until March 18, 2009. (Doc. No. 62).   On March 17, 2009, Defendant Campbell filed a motion for summary judgment (Doc. No. 39) ("Defendant's summary judgment motion") along with a Memorandum of Points and Authorities in support of Defendant Campbell Soup Company's Motion for Summary Judgment (Doc. No. 40) ("Defendant's Summary Judgment Memorandum") and a Statement of Undisputed Material Facts (Doc. No. 41) ("Defendant's Statement of Facts").  Plaintiff opposed Defendant's summary judgment motion by filing Plaintiff's Statement of Undisputed Facts (Doc. No. 57) ("Plaintiff's Statement of Facts"), the Affidavit of Jeffrey Sokal in Opposition to Summary Judgment (Doc. No 57-50 ("Sokal Affidavit"), the Affidavit of Frank V. Balon, Esq. ("Balon Affidavit in Opposition to Summary Judgment") (Doc. No. 58); and a Memorandum of Law ("Plaintiff's Memorandum in Opposition to Summary Judgment") (Doc. No. 59) on April 28, 2009, along with a request for discovery pursuant to Fed.R.Civ.P. 56(f).  Defendant filed a Reply Memorandum in Support of Defendant Campbell Soup Company's Motion for Summary Judgment on

May 19, 2009 (Doc. No. 72 ("Defendant's Summary Judgment Reply Memorandum")) and Campbell Soup Company's Objections to Inadmissible Evidence (Doc. No. 72-2) ("Defendant's Objections"). Country Gourmet has not filed for summary judgment nor has it joined in Defendant's motion. Defendant's summary judgment motion remains pending before the District Judge.

On June 22, 2009, Campbell moved to stay discovery sought by Plaintiff until the District Judge rules on Defendant's summary judgment motion (Doc. No. 77) ("Defendant's motion"). Defendant's motion is supported by a Memorandum in Support of Defendant Campbell Soup Company's Motion for Temporary Stay of Discovery (Doc. No. 78) ("Defendant's Memorandum"), and the Declaration of Jordan D. Weiss, Esq. (Doc. No. 79) ("Weiss Declaration"). In opposition to Defendant's motion, Plaintiff filed on July 10, 2009, the Declaration of Frank V. Balon, Esq. ("Balon Declaration") (Doc. No. 82). On July 17, 2009, Defendant Campbell filed a Reply Memorandum in Support of Defendant Campbell Soup Company's Motion for Temporary Stay of Discovery (Doc. No. 84) ("Defendant's Reply Memorandum").

On July 20, 2009 and July 22, 2009, Defendants also moved for a protective order against depositions noticed by Plaintiff pending a decision on Defendant's motion (Doc. Nos. 87 and 90, respectively). By order filed July 28, 2009 (Doc. No. 92), the depositions at issue were stayed pending action by the court on Defendant's motion and Defendants' motion for a protective order directed to the noticed depositions. Oral argument on Defendant's motion was deemed unnecessary. Based on the following,

Defendant's motion is DENIED.[1]

# FACTS[2]

Plaintiff alleges breach of contract against Defendant Country Gourmet and

Campbell and tortious interference against Campbell.  Plaintiff bases its claims on an

agreement it entered into with Country Gourmet in June 2006 whereby Plaintiff, over a

five-year period, was to produce packaged food products for resale by Country Gourmet

using ingredients provided by Country Gourmet.  Complaint Exh. A ¶ ¶ 1, 36.  The

agreement specified that Country Gourmet was to order Country Gourmet's

requirements for the soup, stock and broth products covered by the agreement

exclusively from Plaintiff including Country Gourmet's soup stock and broth products

sold by Country Gourmet under the Wolfgang Puck label, Complaint ¶ 30, for

distribution by Country Gourmet in Country Gourmet's North American market as

permitted under a license to Country Gourmet from Wolfgang Puck ("the agreement").

Complaint Exh. 1 ¶ ¶ 1(e).  The parties thereafter performed under the agreement, and

the agreement's termination clause, allowing for termination for any uncured material

breach by Plaintiff,[3] was not exercised by either party prior to the notice, received by

Plaintiff from Country Gourmet in May 2008, that Country Gourmet expected to be

acquired by Campbell.  Sokal Affidavit ¶ 12.  Plaintiff was also advised by Defendants

---

[1] Based on the court's disposition of Defendant's motion, the court has scheduled, by order filed contemporaneously with this Decision and Order, further proceedings on Defendants' motions for a protective order.

[2] Taken from the pleadings and papers filed in this action.

[3] Complaint Exh. A ¶ 14.  Plaintiff could also terminate, after 12 months of production, if production thereafter failed to reach 30,000 cases of product in any six-month period.

that unless Plaintiff agreed to delete California from the North American market for Country Gourmet's broth, soup, gravy and sauce products, as defined by Plaintiff's agreement with Country Gourmet, limit the agreement to production of Country Gourmet's products sold under the Wolfgang Puck label, permit production of the products by another company located in California, and limit the amount of products produced for Country Gourmet by Plaintiff under the agreement, Campbell's expected acquisition of Country Gourmet would effectively end the business relationship between Plaintiff and Country Gourmet under the agreement. Complaint Exh. A ¶ 25; Sokal Affidavit ¶ ¶ 6, 17-19; 25-26; 27. According to Plaintiff, Plaintiff was informed by a Country Gourmet representative that Campbell solicited Country Gourmet for the proposed acquisition. Balon Affidavit in Opposition to Summary Judgment ¶ 34. At no time did Country Gourmet exercise its right to terminate the agreement pursuant to the agreement's termination clause.

Plaintiff rejected Defendants' demands, which were communicated to Plaintiff and discussed in correspondence, telephone calls and meetings between representatives of Defendants and Plaintiff, *e.g.*, Plaintiff's Exhibit R in Opposition to Defendant's Motion for Summary Judgment (Letter from Michael McGrath to Jeffrey Sokal, dated May 30, 1998, confirming proposed elimination of the exclusivity provisions of the agreement) (Doc. No. 57-5) ("Plaintiff's Exh. R"); Sokal Affidavit ¶ ¶ 20, 30-35 (describing in detail Defendants' demands and Plaintiff's rejection), and, except for the agreement, Campbell acquired on July 1, 2008 other Country Gourmet's assets. Sokal Affidavit ¶ 37; Exh. A (Asset Purchase Agreement Between Country Gourmet and Campbell South Company) (Schedule 2.2.1) (Doc. No. 53) ("the Asset Purchase

Agreement").  It is undisputed that following consummation of the asset purchase by Country Gourmet and Campbell, Country Gourmet ceased ordering products from Plaintiff.  Complaint ¶ 9.

In July 2008, Campbell obtained a license from Wolfgang Puck to use the Wolfgang Puck brand on Campbell products, and Wolfgang Puck revoked the prior license it had with Country Gourmet pursuant to which Country Gourmet had engaged in wholesale distribution of Wolfgang Puck labeled food products in the North American market as defined in the agreement.  *Id.* ¶ 38; Balon Affidavit in Opposition to Summary Judgment ¶ ¶ 65-66.  The record does not state whether such revocation was solicited by Campbell or Country Gourmet, however, following the asset purchase on June 30, 2008, the Asset Purchase Agreement, Campbell obtained a "master" license from Wolfgang Puck for use on food products for the North American market (Doc. No. 57-5 ("Campbell Press Release July 1, 2008") (Plaintiff's Exh. O).  According to Campbell's press release, as a result of the asset purchase, Campbell had "acquired the Wolfgang Puck soup business from Country Gourmet."  Plaintiff's Exh. O at 1.  Country Gourmet subsequently informed Plaintiff that, based on Campbell's purchase of Country Gourmet's assets, Country Gourmet would cease to order any products from Plaintiff pursuant to the agreement.  Complaint ¶ ¶ 21-22.  This suit followed.

## DISCUSSION

A request for stay of discovery pursuant to Fed.R.Civ.P. 26(c) requires a showing of good cause and is within the sound discretion of the court.  *Davidson v. Goord*, 215 F.R.D. 73, 82 (W.D.N.Y. 2003) (citing *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127,

130 (2d Cir. 1987)).  A finding of good cause for a stay of discovery requires the court to balance several relevant factors including the pendency of a dispositive motion, potential prejudice to the opposing party, the extensiveness of the requested discovery, and the burden of such discovery on the requested parties.  *Ellington Credit Fund, Ltd. v. Select Portfolio Services, Inc.*, 2009 WL 274483, *1 (S.D.N.Y. Feb. 3, 2009).  A stay of discovery is proper where the pending dispositive motion "appears to have substantial grounds" or "does not appear to be without foundation in law."  *Johnson v. New York Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (internal quotation marks omitted) (citing caselaw).  Here, Plaintiff has sought discovery from Country Gourmet and Campbell, as well as non-parties Wolfgang Puck and California Natural Foods ("CNF"); according to Plaintiff, these latter non-parties have not opposed Plaintiff's non-party discovery requests.[4]  Balon Declaration ¶ ¶ 14-15.  Thus, in order to decide Defendant's motion, it is necessary for the court to evaluate the merits of Defendant's summary judgment motion, and to consider those merits, the burden to Campbell in responding to Plaintiff's discovery requests, and the extent of any potential prejudice to Plaintiff if the stay is granted.  *See GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D.Cal. 2000) (court must "'take a preliminary peek at the merits of the allegedly dispositive motion'" to assess its likelihood of success (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D.Fla. 1997) (internal citations omitted)).

Defendant's summary judgment motion is grounded on the contention that, as

---

[4]  If Campbell's summary judgment motion is granted, no discovery of Campbell, as a party to this action, will be required; however, as a non-party, Campbell could remain subject to discovery pursuant to Fed.R.Civ.P. 45.

the agreement did not require Country Gourmet to maintain a minimum level of orders

for the products covered by the agreement, or to continue its business in a manner that

required, during the agreement's five-year term, Country Gourmet to order any product

from Plaintiff, Country Gourmet did not breach the agreement by engaging in an asset

sale to Campbell which excluded the agreement, thereby rendering any further orders

by Country Gourmet from Plaintiff unnecessary.  Defendant's Summary Judgment

Memorandum at 4 ("nothing in the Processing Agreement obligated Country Gourmet to

maintain its requirements at a specific level or to have any requirements at all . . . [or] to

continue its business."); Defendant's Summary Judgment Reply at 7 (absent bad faith, a

party to a requirements contract may reduce its requirements to zero) (citing caselaw).

Campbell therefore contends that if Country Gourmet was not, as a matter of law, in

breach of the agreement, Campbell cannot, as a matter of law, be found liable on

Plaintiff's claim that Campbell is liable, as Plaintiff alleged, Complaint ¶ ¶ 95, 96, as

Country Gourmet's assignee under the theory of successor liability.  Defendant's

Summary Judgment Reply Memorandum at 5-6.  Campbell further argues that if

Country Gourmet did not breach the agreement, Campbell likewise could not, as a

matter of law, be guilty of tortious interference with the agreement as Plaintiff also

claims.  Complaint ¶ ¶ 88-93.  Defendant's Summary Judgment Memorandum at 8-9.

Defendant concedes the agreement constitutes a "requirements contract."  Defendant's

Statement of Facts ¶ 2.

       Under applicable New York law,[5] a requirements contract is not breached where

---

[5]  In accordance with the agreement, Complaint Exh. A ¶ 18 providing that New York governs the agreement, the parties agree that New York law is applicable to the issues in this case.

a party ceases performance based on a good faith change in its business operations for reasons other than factors related to the continued performance of the contract. *Feld v. Henry S. Levy & Sons, Inc.*, 335 N.E.2d 320, 322-23 (N.Y. 1975). In the case of an alleged breach of a supply contract by a buyer, "the proper inquiry requires an analysis of the buyer's subjective motives to determine if it had a legitimate business reason for eliminating its requirements, as opposed to a desire to avoid its contract." *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 759 F.Supp. 1004, 1009 (S.D.N.Y. 1991) (citing cases). In *Feld*, the defendant manufacturer-supplier of bread crumbs was denied summary judgment on the plaintiff purchaser's claim for breach of an output contract defendant had entered into with plaintiff to meet the plaintiff's requirements for such bread crumbs where evidence showed the defendant's decision to terminate the contract may have been based on the defendant's determination, after a brief period of performance under the contract, that the contract was not sufficiently profitable to defendant. *Feld*, 335 N.E.2d at 320. Rejecting defendant's motion for summary judgment, the court in *Feld* specifically found that the defendant destroyed its capacity to continue manufacturing bread crumbs for the plaintiff only after the plaintiff refused to modify, at defendant's request, the requirements agreement to include a higher price for the bread crumbs produced by the defendant under the contract while remaining in the baking business, *id.*, and that such conduct presented "intertwined questions of fact" whether the defendant acted in good faith in engaging in such conduct, calling for a "close scrutiny of its motives" at trial. *Feld*, 335 N.E.2d at 323. As the court stated, "good faith required continued production until cancellation, even if there be no profit." *Id.* The court also stated that cancellation of the requirements contract based on "more

than trivial" losses from continued performance could satisfy the good faith requirement, but held that the existence of such asserted losses as a legitimate basis for cancellation also constituted "a question of fact" precluding summary judgment.  *Id.*

In the instant case, Plaintiff avers that Defendants demanded, as a condition to Campbell's continued performance under the agreement following its anticipated acquisition of Country Gourmet, that Plaintiff agree to significant modifications to the agreement including limits on the scope of products covered by the agreement to products marketed and sold under the Wolfgang Puck label, and their production by Plaintiff, with Campbell replacing Country Gourmet as the purchaser and reseller of products produced by Plaintiff under the agreement, thus significantly reducing Plaintiff's expected sales and profit.  Sokal Affidavit ¶ ¶ 12-20, ¶ ¶ 26-27; Balon Affidavit in Opposition to Summary Judgment ¶ 40.  According to Plaintiff, after Plaintiff refused to acquiesce in Defendants' demands to modification of the agreement, Defendants entered into an asset purchase agreement for a purchase by Campbell of certain of Country Gourmet's assets, excluding the agreement, Asset Purchase Agreement Schedule 2.2.1, contemporaneous with the termination by Wolfgang Puck of its marketing license with Country Gourmet and the grant by Wolfgang Puck of a similar license to Campbell, Sokal Affidavit ¶ ¶ 38-39; Plaintiff's Exh. O, thereby destroying the future economic value of the agreement to Plaintiff.

Campbell does not dispute that following Country Gourmet's notice to Plaintiff, upon consummation of Campbell's asset purchase of County Gourmet's assets, Country Gourmet no longer ordered such products from Plaintiff and that these products were thereafter produced by Campbell or another producer, CNF, located in California.

Sokal Affidavit ¶ 15, 17.  As such, the facts asserted by Plaintiff in opposition to

Campbell's summary judgment motion, if accepted by a jury, demonstrate economically

motivated actions by Country Gourmet, directed to the agreement, which vitiated any

possibility of continued performance by Country Gourmet under the agreement over its

remaining three years.  Campbell does not dispute that had it acquired all of Country

Gourmet's assets, including the agreement, it would have been bound to perform under

the agreement for the remainder of the five-year term of the agreement as County

Gourmet's successor or assignee under paragraph 16 of the agreement.  Complaint

Exh. A ¶ 16.

As in *Feld, supra*, rather than a good faith business decision by Country Gourmet

to cease unilaterally business operations as to its products covered by the agreement or

as a result of a transaction economically neutral as regards the agreement, Plaintiff's

evidence, submitted in opposition to Defendant's summary judgment motion, if accepted

by the trier of fact, shows Country Gourmet's decision to exclude the agreement from its

asset sale to Campbell, and thus effectively terminate the agreement, was motivated by

a desire to enter into a presumably more profitable arrangement – the limited asset sale

– whereby Campbell was to replace Plaintiff as the producer of the products covered

under the agreement or by a producer acceptable to Campbell.   Here, Country

Gourmet's effort to maximize the price of its assets to Campbell, by excluding the

agreement, could reasonably be found to be the economic equivalent of a unilateral

demand that Plaintiff modify the agreement by reducing the price of products produced

for Country Gourmet under threat of a termination beyond the scope of the agreement's

termination provision.  As such, the court finds, for the purposes of Defendant's motion,

Country Gourmet's conduct in seeking modification of the agreement and consummating the asset sale to Campbell presents "intertwined questions of fact," *Feld*, 335 N.E.2d at 323, on the question of Country Gourmet's good faith in seeking such cancellation, *i.e.,* whether there existed a "legitimate business reason for eliminating requirements, as opposed to desire to avoid the agreement," *NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1009. Campbell does not argue that the agreement was not, prior to the proposed acquisition by Campbell of Country Gourmet's assets, economically advantageous to County Gourmet or that Plaintiff's refusal to modify its terms as Defendants requested would in the future subject County Gourmet to more than "trivial" losses potentially justifying cancellation by Country Gourmet. *Feld*, 335 N.E.2d at 323 (fear of "more than trivial" losses arising from further performance requirements contract may constitute good faith basis to cancel); *see also Diversified Products, Inc. v. Tops Markets, Inc.*, 2001 WL 640697, *5 (W.D.N.Y. June 7, 2001) (rejecting summary judgment to defendant buyer where defendant buyer, under requirements contact, obligated defendant to buy and resell plaintiff's sunglasses, failed to include the supply contract in asset sale agreement of defendant's assets and, after the purchase of defendant's assets, defendant continued to sell same products supplied by different producers). It is undisputed that Country Gourmet continued in existence immediately after the asset sale, Affidavit of William J. O'Shea (Doc. No. 42) ("O'Shea Affidavit") ¶ 4; Defendant's Statement of Facts ¶ 8; however, it is unclear from the record whether any of its food products, covered by the agreement, continued to be sold under the Country Gourmet label after the asset purchase by Campbell. Neither Campbell nor Country Gourmet have submitted factual affidavits directly contesting the averments stated in

the Sokal Affidavit, except that Campbell states that, contrary to Plaintiff's assertion, Country Gourmet approached Campbell for a purchase of its business approximately six months before the asset purchase at issue. O'Shea Affidavit ¶ 3.

In the instant case, the asset purchaser, Campbell, which, according to Plaintiff, solicited Country Gourmet for an acquisition of Country Gourmet rather than an asset purchase, Sokal Affidavit ¶ 12; Balon Affidavit in Opposition to Summary Judgment ¶ 34, was well aware of the agreement before the asset purchase was effected, *id.*, and, as in *Diversified, supra*, Country Gourmet's broth and stock products which were covered by the agreement were sold after the asset purchase agreement was completed. Plaintiff's Exh. O at 1. The present record supports the inference that but for Wolfgang Puck's transfer of the marketing license from Country Gourmet to Campbell in conjunction with the asset purchase, the products produced by Plaintiff for sale under the Wolfgang Puck label would also continue to be sold by Country Gourmet. *Id.* Instead, Plaintiff avers, Country Gourmet and Campbell, through the asset purchase, frustrated Country Gourmet's further performance under the agreement, depriving Plaintiff of the exclusive production business Plaintiff enjoyed under the agreement. Sokal Affidavit ¶ 12 ("Campbell was interested in performing under the Processing Agreement in place of Country Gourmet"); ¶ 18 (Campbell and Country Gourmet demanded modifications to the agreement to allow Country Gourmet and Campbell to produce broth soup, stock, gravy and sauce products in California as well as limiting Plaintiff's status as the exclusive producer of Country Gourmet's products covered by the agreement); ¶ 26 (Defendants demanded the amount of production by Plaintiff to be "capped"); ¶ 27 (agreement to be limited to Wolfgang Puck labeled

products).

Contrary to Campbell's contention, Defendant's Summary Judgment Reply Memorandum at 7-8, suggesting the holding of *Diversified* is restricted to its facts such that, absent a showing that Plaintiff's profits were limited to the later years of the agreement, Country Gourmet was entitled to cease ordering product from Plaintiff, the holding in *Diversified* is not so limited under *Feld*, as applied by the court in *Diversified. Diversified Products, Inc.*, 2001 WL 640697, *5. Nothing in the *Feld* decision, representing applicable New York law on this issue, supports such a cramped view of its holding.

In particular, Defendant argues, in reliance on *Diversified Products, Inc.*, that unless Plaintiff demonstrates Country Gourmet was aware that Plaintiff's profits under the agreement would be limited to the remaining three years of the agreement's five-year term, Plaintiff lacks any ground to assert Country Gourmet's breach. Defendant's Summary Judgment Reply Memorandum at 7-8. Although the record contains no specific information on this question, the court finds significance in the fact that Defendant fails to proffer any affidavit from Country Gourmet supporting such assertion. To the contrary, a fair reading of Plaintiff's opposition to Defendant's summary judgment motion is that the agreement was profitable to Plaintiff from its inception, and that, but for Campbell's intervention, Plaintiff fully expected such profitability to continue during the remaining three years of the business relationship between Country Gourmet and Plaintiff. That Campbell paid a substantial price for Country Gourmet's soup business, including its Wolfgang Puck label product sales, Exh. A ¶ 2.6, reasonably supports this inference. Therefore, Plaintiff's claims and evidence in opposition to summary judgment

present a case as strong, if not stronger, than the plaintiff's claim in *Diversified Products, Inc*.  As such, the court finds Defendant's contention lacks merit.  Accordingly, Defendant's motion lacks a substantial basis in law and fact on this contention.

Turning to the strength of Campbell's request for summary judgment on Plaintiff's tortious interference claim, Campbell argues that because, as a matter of law, there was no enforceable requirements contract between Plaintiff and Country Gourmet, Campbell Summary Judgment Memorandum at 8-9, under New York law, an asset purchaser does not tortiously interfere with a requirements contract when its purchase of the seller's assets excludes such contract.  Defendant's Summary Judgment Reply Memorandum at 8-9 (citing *NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1016).  A claim for tortious interference with a contract under New York law "requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract and actual damages resulting therefrom."  *Lama Holding Company v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) (citing New York cases).

Here, Plaintiff, in opposition to summary judgment, averred that Campbell sought to acquire Country Gourmet, was aware of the agreement and initially expected to perform under the agreement for the balance of its five-year term in place of Country Gourmet as its successor or assignee following the proposed acquisition.[6]  Sokal

---

[6] Under the agreement, if it had acquired Country Gourmet, Campbell would have been required to perform as Country Gourmet's successor under the agreement's successor and assigns provision. Complaint Exh. A ¶ 16.

Affidavit ¶¶ 12-13.  Except as to whether Campbell solicited Country Gourmet for an acquisition, Campbell has not disputed those averments.  After Plaintiff refused to modify the agreement, as Defendants demanded, Campbell and Country Gourmet negotiated a sale of Country Gourmet's assets, excluding the agreement, instead of an acquisition, as had originally been contemplated by Defendants, with the result that following consummation of the asset purchase, County Gourmet ceased ordering product from Plaintiff.  *Id.* ¶ 33 (Campbell's representative "threatened" Plaintiff that unless Plaintiff agreed to the demanded modifications of the agreement Country Gourmet would end its operations and stop ordering products from Plaintiff).[7]  It is undisputed that following the asset purchase in July 2008, Country Gourmet ceased to order products covered by the agreement from Plaintiff.  Upon this record, the trier of fact could therefore reasonably find that Campbell was aware the agreement and, through substantial financial considerations under the terms of the asset sale, persuaded Country Gourmet to agree to the terms of the asset purchase excluding the agreement, raising the value of the purchased assets to Campbell and the corresponding price paid to Country Gourmet, thereby inducing Country Gourmet to terminate the agreement without a good faith business justification or upon a ground provided under its termination clause.  As such, on this record, serious material issues of facts supporting Plaintiff's tortious interference claim against Campbell are presented.

Campbell's reliance on *NCC Sunday Inserts, Inc.*, *supra,* Campbell Summary Judgment Reply Memorandum at 8-9, for its contention that a purchaser of a

[7]  According to the Asset Purchase Agreement, Campbell purchased numerous manufacturing, distribution and brokerage agreements existing between County Gourmet and third-parties.  Exhibit A Schedule 2.2.1.

requirements contract buyer's assets incurs no exposure to a requirements contract seller's claim for tortious interference as a result of such asset purchase is based on a misreading of that case. In *NCC Sunday Inserts, Inc.,* the requirements buyer sought a declaratory judgment that the sale of its assets, excluding an exclusive requirement printing contract with defendant requirements seller, did not breach the contract through an asset sale to a third party in which the contract was an excluded asset. In that case, the court held that where the requirements contract buyer sold its assets, excluding the requirements contract, in order to avoid imminent and substantial losses from its underlying business to which the asset purchase related, the asset purchaser, on the facts presented in that case, could not be found guilty of causing the asset seller to breach its requirements contract with the defendant supplier-counter claimant, and granted summary judgment against the defendant supplier-counter claimant on its tortious interference claim. *NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1016. Specifically, the court found the evidence showed plaintiff requirements seller's motive was to avoid "economic ruin," *id.,* at 1010, and that the asset purchaser was motivated only by its desire to maximize its competitive position by eliminating plaintiff as a competitor, irrespective of any "incidental interference" with the defendant counter-claimant's requirements contract with plaintiff. *NCC Sunday Inserts, Inc.,* 759 F.Supp. at 1016.

In contrast, Plaintiff's evidence, if accepted, supports a finding that Country Gourmet's processed food business, to which the agreement pertained, was entirely profitable to Country Gourmet, a conclusion supported by the fact that but for Plaintiff's refusal to modify its agreement with Country Gourmet, Campbell initially intended to

acquire, for a substantial price, Country Gourmet outright thus succeeding to Country Gourmet's obligations and benefits under the agreement as its successor or assignee. Sokal Affidavit ¶¶ 12-13, 17. *See NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1009 (noting that without the asset sale, requirements contract buyer, NCC, the asset seller and counter-claim defendant, expected to lose between $14 and $48 million in the remaining period of the contract after the sale). Campbell does not argue otherwise. Upon this record, a reasonable juror could reasonably infer that Campbell, through its asset purchase agreement with Country Gourmet, intentionally interfered with Plaintiff's agreement with Country Gourmet by inducing Country Gourmet's to discontinue its performance under the agreement and instead enter into the asset sale effectively replacing Plaintiff with Campbell and NCS in the production of Country Gourmet's products that had been produced by Plaintiff, profitably to both Plaintiff and Country Gourmet, under the agreement. As a result, Plaintiff's realization of its expected future profits based on the agreement was eliminated and transferred to Campbell through the asset sale.

Although Plaintiff, as a requirements seller, assumed the "risk" that Country Gourmet could decide for reasons independent of the agreement to cease business operations, *Diversified Products, Inc.*, 2001 WL 64067, *5 (seller in requirements contract "assumes risk" buyer will discontinue business); *NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1008 (requirements seller "'assumes the risk of all good faith variations in the buyer's requirements even to the extent of a determination to liquidate or discontinue the business'" (quoting *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333, 1337-38 (7th Cir. 1988))), Plaintiff did not assume the risk that, at Campbell's behest,

Country Gourmet would transfer to Campbell for future performance the food production and distribution business relationship established by the agreement, so as to deprive Plaintiff of its expected profits over the remaining three years of the agreement. Relevantly, according to Campbell, the products produced by Plaintiff for marketing and sale by Country Gourmet under the Wolfgang Puck label alone have annual anticipated sales of $22 million. Plaintiff's Exh. O at 1. As such, Campbell's interference with Plaintiff's agreement through the asset purchase, if proven, can hardly be considered as "incidental," *NCC Sunday Inserts, Inc.*, 759 F.Supp. at 1016, as Campbell's realization of future profits from future sale over the remaining three years of the agreement of products produced by Plaintiff and sold under the Country Gourmet and Wolfgang Puck labels required eliminating Plaintiff as the exclusive supplier for the products covered by the agreement. *Id.* at 1012 (tortious interference requires "actual inducement" of breach by third party). On these facts, a reasonable juror could reasonably conclude that because of Campbell's profit motives, related to the contemplated asset purchase, Campbell induced Country Gourmet's breach of the agreement by consenting to exclude it from the asset purchase. Thus, a substantial basis in fact or law for Campbell's summary judgment motion on Plaintiff's tortious interference claim is lacking.

Campbell further asserts that as an asset purchaser it is not as a matter of law bound to the agreement and therefore cannot be liable to Plaintiff on Plaintiff's breach of contract claim against Country Gourmet under the general rule, applicable in New York, that a corporation which purchases the assets of another corporation is not liable for the obligations of the seller corporation, unless there is an express or implied agreement to

assume an asset seller's obligations, a consolidation or merger – *de facto* or formal, the purchaser is a mere continuation of the seller, or where the transaction is entered into fraudulently to escape liability for the seller's obligations. Defendant's Summary Judgment Memorandum at 5-6 (citing *Cargo Partner AG v. Albatrans, Inc.*, 207 F.Supp.2d 86, 93 (S.D.N.Y. 2002) (citing *Schumacher v. Richards Shear Co.,* 451 N.E.2d 195, 198 (N.Y. 1983))).

The fraud exception for asset purchaser liability, as recognized in *Schumacher,* extends to liability for the trade obligations of the seller. *Cargo Partner AG*, 207 F.Supp at 93 n. 7 (citing 15 Fletcher Cyc. Corp. (2009) § 7122). Under this exception such liability may be imposed on several alternative grounds including that the transaction (1) was made without fair consideration, (2) was made with actual intent to hinder, delay or defraud a creditor, or (3) rendered the seller insolvent as a result. *Amalgamated Bank of New York v. Marsh* ("*Amalgamate Bank*"), 823 F.Supp. 209, 222 (S.D.N.Y. 1993) (citing *Int'l Association of Machinists and Aerospace Workers v. Allegis Corp.*, 545 N.Y.S.2d 638, 642 (Sup. Ct. N.Y. Co. 1989); and *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272 (S.D.N.Y. 1991)).

Fair consideration for the asset transfer requires that payment be fair equivalent value and in good faith. *Id.* (citing N.Y. Debt. & Cred. Law § 272) (McKinney 2009).[8] A conveyance made with actual intent to hinder, delay or defraud a present or future creditor is considered fraudulent as to such creditors. N.Y. Debt. & Cred. Law § 276. The existence of such intent "is generally a question of fact which precludes summary

---

[8] All references to N.Y. Debt. & Cred. Law are to McKinney 2009, unless otherwise indicated.

judgment." *Farmers Production Credit Association of Middletown v. Taub,* 504 N.Y.S.2d 448, 448 (2d Dep't. 1986) (citing *Trustees of Hamilton College v. Cunningham,* 418 N.Y.S.2d 251 (4th Dep't 1979)) and may be inferred from the circumstances surrounding the transaction." *Hassett v. Goetzmann, Jr.,* 10 F.Supp.2d, 181, 189 (N.D.N.Y. 1998) (citing cases). Plaintiff's status as a future creditor subject to the protection of N.Y. Debt. & Cred. Law § 276 was established upon the accrual of Plaintiff's breach of contract claim. *See In the Matter of Shelly*, 671 N.Y.S.2d 803, 805 (3d Dep't. 1998) ("relation of debtor and creditor arises the moment the cause of action accrues") (citing cases). *See also Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F.Supp.2d 341, 347 (N.D.N.Y. 2001) (party asserting contingent claim for fraudulent transfer, which had not yet accrued and which was dependent on a future event, was a "creditor" for purposes of fraudulent transfer provisions of N.Y. Debtor and Creditor Law (citing *Shelley*, 671 N.Y.S.2d 803)). "It is immaterial that the obligation may not have matured, or even that it did not exist, at the time of the transfer." *Kendzia v. Gregian*, 635 N.Y.S.2d 886, 887 (4th Dep't. 1995) (citing authorities and noting that a plaintiff may establish the debt, whether matured or unmatured, and "challenge the conveyance in the compass of a single suit." (internal quotations omitted)). Additionally, a "transaction is not fraudulent if it is both an exchange for equivalent value <u>and</u> made in good faith." *Shamis v. Ambassador Factors Corporation*, 34 F.Supp.2d 879, 898 (S.D.N.Y. 1999) (citing *Computerland Corporation v. Batac, Inc.*, 750 F.Supp. 97, 98 (S.D.N.Y. 1990) (citing New York caselaw) (underlining added)). Moreover, fair consideration requires the presence of good faith. *See Computerland Corporation*, 750 F.Supp. at 98 (citing N.Y. Debt. & Cred. Law § 272); *Clarkson v. Shaheen*, 533 F.Supp. 905, 931 (S.D.N.Y. 1982)

(good faith an "indispensable component" of fair consideration).

Under New York law, a transaction is voidable for lack of "good faith when" one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others. The term 'good faith' does not merely mean the opposite of the phrase 'actual intent to defraud.'" *Computerland Corporation*, 750 F.Supp. at 98 (quoting and citing *Southern Industries, Inc. v. Jeremias*, 411 N.Y.S.2d 945, 949 (2d Dep't. 1978) (citing *Sparkman & McLean Co. v. Derber*, 481 P.2d 585 (Wash. Ct. App. 1971)). N.Y. Debt. & Cred. Law § 270 protects against fraudulent transfers "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." *See Amalgamated Bank*, 823 F.Supp. at 222 (quoting N.Y. Debt. & Cred. Law § 270). Plaintiff's evidence shows that, at the time of the asset purchase, Campbell was aware of the agreement and that as a result of the agreement's exclusion from the terms of the asset purchase Country Gourmet would breach the agreement because Country Gourmet lacked a good faith basis for terminating the agreement.

As discussed, Discussion, *supra*, at 8-12, 18-22, the available evidence demonstrates material issues of fact as to Country Gourmet's lack of a good faith business justification for its ceasing to order products from Plaintiff under the agreement thus constituting a breach of the agreement, and Campbell's role in inducing such cessation and breach as constituting tortious interference with the agreement. Such evidence could reasonably cause a trier of fact to also find that Country Gourmet and Campbell lacked an honest belief that excluding the agreement from the asset purchase

22

was proper, that Defendants intended to take an "unconscionable advantage," *Southern Industries, Inc.*, 411 N.Y.S.2d at 949, of Plaintiff, that Defendants had knowledge, through their direct participation in the alleged attempts to 'bulldoze' Plaintiff into acquiescing to their demands to modify the agreement, and that their actions would "hinder" or impair Plaintiff's right to Country Gourmet's full performance over the remaining three-year term of the agreement. As such, substantial issues of fact exist demonstrating Defendants' lack of good faith, a prerequisite to Campbell's ability to avoid liability for Country Gourmet's breach of contract, under the fraudulent transaction exception to the general rule exempting an asset purchaser like Campbell from successor liability. Should further discovery establish that as a result of the asset purchase Country Gourmet was rendered insolvent in respect to Plaintiff's claim, successor liability may be imposed against Campbell on that ground as well. *Marsh*, 823 F.Supp. at 222. Accordingly, Campbell lacks a substantial basis in law and fact for its summary judgment based on its contention that it cannot be liable for Country Gourmet's breach as a matter of law.

Nor is there any merit in Campbell's contention that Plaintiff's assertion of successor liability under the fraud exception fails to satisfy the particularity pleading requirement of Fed.R.Civ.P. 9(b) ("Rule 9(b)"). Campbell's Reply Memorandum at 5 (citing *Cargo Partner AG,* 207 F.Supp. at 116 (citing caselaw)). Even assuming Rule 9(b) requirements are applicable to Plaintiff's claims, a fair reading of the Complaint shows it is replete with allegations detailing the facts upon which Plaintiff asserts Country Gourmet lacked a good faith basis for its renunciation of the agreement and that Campbell was aware of this fact and sought to capitalize on it. *E.g.*, Complaint ¶ 54

23

("McGrath [Country Gourmet] verbally stated to Mr. Sokal [Plaintiff] that he believed . . .
[Plaintiff should] "play ball" and agree to [Defendants'] demanded modifications . . ..");
Complaint ¶ 62 ("Ozimek [Campbell] threatened that if Steuben did not [agree to the
modifications of the agreement demanded by Defendants] the acquisition of Country
Gourmet would be purposefully structured in a manner . . . to sidestep and . . .
circumvent . . . [the agreement."]).  As such, the Complaint sufficiently comports with
Rule 9(b)'s requirements.

Defendant Campbell's contention, Defendant's Summary Judgment
Memorandum at 9; Defendant's Reply Memorandum at 2, that Plaintiff failed to timely
engage in discovery to oppose summary judgment is disingenuous.  Until mediation
was complete, the parties were expected to prepare for mediation, not engage in full-
blown discovery.  The record does not explain why mediation failed to take place timely
as required by the court.  Plaintiff therefore cannot be faulted for deferring active
discovery directed to the merits of its claims until after mediation and in immediate
response to Campbell's summary judgment motion.

Further, Defendant Campbell's effort to defeat Plaintiff's opposition to summary
judgment by asserting that Plaintiff's evidence is inadmissible hearsay is unavailing as
several of Plaintiff's averments attributing statements to Campbell's employees,
Defendant's Summary Judgment Reply Memorandum at 3-4, Objections to Inadmissible
Evidence (Doc. No. 72-2) at 1-6, 9-12, may constitute admissions pursuant to Fed. R.
Evid. 801(d)(2).  *See Martha Graham School and Dance Foundation, Inc. v. Martha
Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 644 (2d Cir. 2004) (holding
list of 21 ballets that were "filmed and sold" was admissible, pursuant to Fed. R. Evid.

801(d)(2), as admissions of party opponent in litigation brought by legatee of deceased choreographer's estate to establish copyright ownership of dances created by choreographer because list was created by legatee's assistant in scope of her employment by legatee). Significantly, Campbell does not deny Sokal's averment that a representative of Campbell met on June 23, 2008 with Plaintiff's representative to reiterate Country Gourmet's and Campbell's demands for modification of the requirements contract initially communicated to Plaintiff by Mr. McGrath, a Country Gourmet official. Sokal Affidavit ¶ 31. Nor does Campbell dispute it jointly, with Country Gourmet, negotiated directly with Plaintiff to modify the agreement to meet their demands. As such, there is a sufficient factual basis upon which to find that the communications directed to Plaintiff by McGrath and Ozimek as described by Plaintiff in opposition to Defendant's summary judgment motion are admissible equally against Campbell as well as Country Gourmet under Fed. R. Evid. 801(d)(2)(C) ("a statement by a person authorized by the party to make a statement concerning the subject"), and under Fed. R. Evid. 801(d)(2)(D) ("a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Campbell's reliance on *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993), Campbell's Soup Company's Objections to Inadmissible Evidence (Doc. No. 72-2) (*passim*) to exclude Plaintiff's evidence under Rule 801(d)(2) is misplaced as in *Harwood*, the challenged statement was made to a third party, not a co-defendant, *i.e.*, party-opponent, as in the instant case, charged with liability to Plaintiff. Accordingly, *Harwood* is inapposite and thus affords no factual basis to negate the specific averments proffered in Sokal's affidavit opposing summary judgment.

Further, Campbell's evidentiary attacks, Campbell Soup Company's Objections to Inadmissible Evidence (Doc. No. 72-2) on Plaintiff's attorney's affidavit merely underscores that Plaintiff has been unfairly deprived of the full opportunity for discovery on the highly fact intensive issues going to Defendants' motives and lack of good faith as presented in this case. "[S]ummary judgment should only be granted '[i]f *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) and citing *Celotex Corp.*, 477 U.S. at 323)) (additional quotation marks omitted; alteration and italics in original). "'The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.'" *Hellstrom*, 201 F.3d at 97 (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) (additional quotation marks omitted). "Only in the rarest of cases may summary judgment be granted" prior to affording the nonmovant any opportunity for discovery. *Hellstrom*, 201 F.3d at 97 (citing cases). Thus, the lack of an opportunity for full discovery by Plaintiff precludes summary judgment at this time.

Finally, Campbell argues Plaintiff's discovery requests are burdensome. Defendant's Memorandum at 2-3. In particular, Campbell points to Plaintiff's request for depositions of four Campbell officials, three depositions directed to Country Gourmet, interrogatories and requests to admit to Campbell and Country Gourmet, and non-party subpoenas, to California Natural Foods ("CNF"), and Wolfgang Puck. *Id.* However, since filing Campbell's motion for summary judgment, Campbell and Country Gourmet

have answered Plaintiff's initial interrogatory and document requests, and neither Wolfgang Puck nor CNF have objected to Plaintiff's subpoenas, Balon Affidavit ¶ 13. Moreover, Wolfgang Puck has complied with Plaintiff's subpoenas, and CNF has promised compliance. Balon Affidavit ¶¶ 14-15. Significantly, Country Gourmet has not joined in Campbell's motion seeking a stay. Indeed, Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) listed two officers of Country Gourmet and three officers of Campbell as possessing relevant information on the claims and defenses in this case. Balon Affidavit in Opposition to Summary Judgment ¶ 9. Given the fact-intensive issues of Country Gourmet's good-faith basis for termination, and Campbell's knowledge of the agreement and its alleged intent to defeat Plaintiff's contract rights by the asset purchase instead of an outright acquisition of Country Gourmet in response to Plaintiff's refusal to modify the agreement as Defendants demanded, the court finds that Plaintiff's need for further discovery including depositions of Country Gourmet and Campbell officials outweighs any serious prejudice to Campbell when balanced against Plaintiff's interest in pursuing such evidence, especially recollections of the content of verbal communications between the parties before these recollections turn stale.

Accordingly, based on the instant record, the court find Campbell's motion for summary judgment lacks a substantial basis in fact and law sufficient to warrant a stay in discovery and that the balance of prejudice distinctly favors Plaintiff.

**CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 77) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: September 30, 2009
Buffalo, New York